**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

```
_____
JANET HEIM,                     )
                Plaintiff,      )
V.                              )      Civil Action No. 1:05cv282
                                )
THE PRUDENTIAL INSURANCE        )
COMPANY OF AMERICA,             )
                                )
                Defendant.      )
_____)
```

<u>**MEMORANDUM OPINION**</u>

In this action, plaintiff, Janet Heim ("Heim"or "plaintiff"), asks this Court to overturn an administrative determination made by The Prudential Insurance Company of America ("Prudential"), the insurer and administrator of a disability insurance policy ("the Plan"). The parties agree that the claims are governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). <u>See</u> 29 U.S.C. §§ 1001-1461.

During her original claim, the plaintiff was treating with three physicians, Dr. Victoria Merkel (primary care physician), Dr. Douglas Rennert (pulmonologist), and Dr. Liza Gold (psychiatrist). Under the policy at issue, the plaintiff is not entitled to benefits related to mental illness/depression and therefore the relevant factors center mainly around her diagnosis and treatment of alleged asthma.

Ms. Heim's treatment with Dr. Rennert predated her claim for benefits under the Plan.  By report of June 9, 1997, it was Dr. Rennert's opinion the "[i]t is often difficult to evaluate the severity of [Ms. Heim's] asthma since her airflow reductions are restricted suggesting lack of patient effort in the testing.  A series of diagnostic examinations performed in 1998 were all normal.  These included a March 9, 1998 chest scan revealing no active pulmonary disease, an April 28, 1998 CT scan of the thorax finding that the central airways and bronchi were normal, and normal chest x-rays on May 5, 1998 and November 4, 1998.

Beginning in January 1999, Dr. Rennert reported that Ms. Heim's asthma was back to baseline.  A month later on February 1, 1999, Dr. Rennert reported an examination that was "again unremarkable" with a clear chest exam and no significant findings.

In December 1999, Ms. Heim underwent a pulmomography that showed restricted airflow on that date.  In an April 18, 2000 questionnaire response, Dr. Rennert hypothesized that, if the claimant were working, treatment for her asthma would cause her to be out approximately three times per month.  He makes these findings without contemporaneous physical examination.

On June 11, 2000, Dr. Rennert completed an Attending Physician' Statement that Ms. Heim submitted in support of her original claim for benefits.  In his statement, Dr. Rennert lists the plaintiff's illness as dyspnea secondary to asthma and

depression.  He indicates that the patient is currently controlled on therapy and is able to perform limited sedentary work.

On July 20, 2000 Dr. Rennert authored a letter stating that the plaintiff suffers from both asthma and chronic depression.  He opines that her inability to remain employed is due to exacerbations of asthma "and/or flare-ups of her depression/anxiety disorder", and that she is unable to work at her previous job at Xerox.  Dr. Rennert further guesses that it is "unlikely" that she is capable of working either full or part time at any employment, but does not state whether this is attributable to the asthma or chronic depression.  This letter is also not based upon any contemporaneous physical examination.

On October 4, 2000, Ms. Heim's primary physician, Dr. Merkel, reports that she discussed asthma, issues of depression, and the need for colonoscopy with Ms. Heim, but performed no physical examination.  A week later, Ms. Heim was admitted to Reston Hospital Center for asthma and subsequent work up for treatment of a gastric condition found to be clostridium difficle, and a colonoscopy was recommended.  As to Ms. Heim's asthma treatment from this hospital visit, her pulmonary function tests read within normal lung volumes.  The following week, Dr. Rennert authored a letter dated October 18, 2000 indicating that Ms. Heim was unable to perform her employment at Xerox.

In January 2001, based upon the unpersuasive medical evidence thus far, Prudential requested an independent medical review by Lawrence Repsher, M.D., a lung disease specialist.  Upon review of the entire medical record, supplemental medical records provided by Ms. Heim, and further questioning from Prudential, Dr. Repsher found no evidence of chronic asthma or other lung condition.

Thereafter, Dr. Rennert authored a declaration on February 6, 2002 at Ms. Heim's request.  Dr. Rennert opined that, nothwithstanding her continued depression, Ms. Heim was not able to work "full time" due to her asthma.  He made no comment about her ability to perform part time or sedentary work.

Without any recent examinations to support her treating physicians' generic and insufficient claims of disability, Prudential continued to evaluate Ms. Heim's medical claims and contentions by requesting an independent medical examination by Brian G. Salisbury, M.D.  Upon physical examination of the plaintiff on July 1, 2002, Dr. Salisbury found a normal cardio pulmonary examination with no evidence of resting hypozemia nor any hypoxemia with extertion.  He diagnosed her with asthma of undetermined severity and found it difficult to determine her functional impairment.  Dr. Salisbury believed that Ms. Heim's medications were appropriate and comprehensive to control her asthma.  In an addendum of August 1, 2002, Dr. Salisbury recommended a body plethysmograph to determine airway resistance.

-4-

After the plaintiff moved to Florida she acquired a new primary care physician, Dr. Stanley Rosenberg.   On September 4, 2002, Dr. Rosenberg, reported Ms. Heim's major complaint as lack of sleep because she was going through a divorce.   As to her pulmonary function, he found her lungs were clear.   Concerned about her stress levels, Dr. Rosenberg ordered an EKG, which was performed on September 13, 2002 and reported as normal.

The plaintiff also sought out a new pulmonologist upon recommendation by Dr. Rosenberg.   On November 19, 2002, Ms. Heim and her initial consultation with Warren Abel, M.D.   Dr. Abel noted in his consultation report that the patient volunteered that she was recently involved in a legal action having to do with her being disabled based on her asthma.   Dr. Abel reports that the patient notes her occupation as being on long term disability for asthma. Upon exam, however, Dr. Abel noted that Ms. Heim was in no acute respiratory distress and her chest exam revealed clear breath sounds.   Dr. Abel also noted that Ms. Heim appeared to be voluntarily limiting her exertion when asked to take a deep breath and that she would repeatedly demonstrate tensing of neck muscles during inspiration so as to appear that she was limiting excursion upon exam.   His conclusions, based upon exam, were that Ms. Heim has a history of asthma which appears to be well controlled with moderate medication.

On January 30, 2003, Bayfront Medical Center admitted Ms. Heim for symptoms related to an allergic reaction to lidocaine from a dental procedure that initially caused facial swelling and lethargy.  The history taken at this admittance revealed alcohol abuse and treatment with "AA" since 1998.  At this visit, Ms. Heim also reported her progressing divorce.  The medical findings note that her asthma was controlled, and that she was not having any respiratory problems.  After a 23-hour observation including a negative chest x-ray, stable labs and normal breath sounds, the plaintiff was discharged with only a residual complaint that her root canal was incomplete.

In a continuing effort to seek satisfactory proof of a chronic disabling condition, Prudential submitted two letter to Dr. Rennert in April 2003, requesting his opinion as to whether Ms. Heim required additional diagnostic testing, including a body plethysmograph.  No response to those letters was received.  Ms. Heim continued to list Dr. Rennert as her treating pulmonologist in June 2003.  Prudential also received a September 16, 2003 report from Dr. Rosenberg wherein he recorded the plaintiff's main complaint of stress related to her ongoing divorce.  Despite reports of overwhelming stress due to the divorce, Dr. Rosenberg found that her lungs sounded clear.  Also in 2003, Prudential acquired an internal medicine review by Dr. Kowalski that revealed no impairment from sedentary work on a full time basis.

The next, and last, medical report submitted by the Plaintiff is a May 8, 2004 emergency room record from Northside Hospital. Ms. Heim was admitted for anxiety and asthma. She was diagnosed with anxiety asthma attack allergy reaction to latex balloons. The plaintiff was admitted and discharged in less than one and a half hours.

With only these isolated hospital records submitted by the plaintiff, Prudential sought another internal medical review to guide them in their benefits determination. In August 2004, the records filed with the plaintiff's last appeal were submitted to Jill Fallen, M.D. for review. Dr. Fallen reviewed the documentation of the January 2003 and May 2004 hospitalizations and found that they did not reveal a severe or chronic asthmatic condition, and did not substitute total disability. Rather, they were isolated episodes of hospitalizations due to allergic reactions.

The plaintiff, who was employed by Xerox Corporation ("Xerox") as a Manager of Education and Training, received disability coverage under the Policy stemming from that employment. The plaintiff describes her position as requiring her to manage leadership training for the world which included heavy travel and various presentations. Ms. Heim is well educated, having earned her undergraduate degree and an MBA. She began her employment with Xerox in 1972 and continued until March 10, 1998 when she stopped

working in connection with the conditions described previously. Under separate employer funded policies unrelated to the contract at issue, the plaintiff was granted five months of short term disability and twenty-four months of long term disability ending on August 9, 2000. Contrary to the policy at issue here, the predecessor policy providing short term disability and the initial 24-months of long term disability coverage evaluated the plaintiff based on whether she was able to perform the duties of her occupation as a Manager of Education and Training, rather than whether she was able to perform the duties of "*any gainful occupation*".

After the expiration of the short term and 24 month long term disability plans funded by her employer, the plaintiff was thereafter subject to the policy language of the Plan at issue in this case - termed the "Post 29-month Plan" for extended long term disability coverage. The Plan at issue requires the plaintiff to be disabled from "*any gainful occupation* for which she is reasonable fitted," as more fully defined in section A above, in order to be eligible for benefits.

Under this Post 29-month Plan, the plaintiff filed her initial claim for benefits on July 17, 2000. Upon receipt of this application, as though the entire disability determination process, Prudential collected information from various sources in order to assess plaintiff's medical history and present medical condition.

-8-

Several requests for medical records were sent to Dr. Rennert, Dr. Merkel, and Dr. Gold to acquire medical documentation of Ms. Heim's conditions.

After thoroughly reviewing the medical information provided, Prudential denied Ms. Heim's initial total disability claim on September 18, 2000 because Prudential determined that the medical evidence, including normal respiratory exams by Dr. Rennert, did not support a finding of total disability under the terms of the plan. Ms. Heim then appealed Prudential's initial determination on November 17, 2000, based on her assertion that Prudential should find her disabled because the Social Security Administration had done so previously. The Social Security Administration determination, however, was based upon a myriad of claimed illnesses including depression, anxiety, sinusitis, right knee impairment, and asthma, and took into account restrictions that are not applicable to the present claim. Although, ultimately concluding that the claimant was entitled to their benefits, which are determined under standards that are different from those of the Plan, the Social Security Administration also determined that Ms. Heim has residual functional capacity for sedentary work.

In this initial appeal, the plaintiff also relied upon Dr. Rennert's April 18, 2000 questionnaire response which presumed, hypothetically, that if the plaintiff was working she may miss three or more days of work per month. Notably, this April 18, 2000

-9-

questionnaire response was not based upon a contemporaneous physical exam or assessment of the plaintiff and did not cite to any specific physical examinations that supported Dr. Rennert's estimates. Ms. Heim also provided Prudential with Dr. Rennert's October 18, 2000 letter, which was again not based upon a physical examination or assessment, but rather relied upon a diagnostic test performed almost eleven months prior. Moreover, Dr. Rennert's October 18, 2000 letter opines as to potential disability based upon Ms. Heim's prior job at Xerox, and not under the "*any gainful occupation*" criteria contained in the Plan. An additional letter from Ms. Heim's primary care physician, Dr. Victoria Merkel, dated November 9, 2000 was also cited in support of plaintiff's initial appeal. Here too, Dr. Merkel responded in letter format without contemporaneous examination, and deemed Ms. Heim's condition as preventing her from performing the job at Xerox that she held prior to March 1998. Thus, again, Ms. Heim's physicians provide an irrelevant assessment of her functional abilities as related to the Plan at issue.

Prudential reviewed the plaintiff's appeal of the first denial of her claim with all accompanying medicals and also acquired an independent expert medical review by Dr. Lawrence Repshar, an environmental and occupational lung disease specialist. By his report of January 8, 2001, Dr. Repshar found, based upon all of the medical evidence in the file and on appeal, that there was no

-10-

evidence of asthma or obstructive lung disease.  He opined that Ms. Heim's symptoms may be the result of vocal cord dysfunction syndrome, which is a psychiatric illness related to depression and anxiety.  He further found that Ms. Heim was capable of performing duties using the "any occupation" standard.  Dr. Repshar also reviewed additional records provided by the plaintiff on January 12, 2001, including records of her October 2000 hospitalization. In an addendum of January 26, 2001, Dr. Repshar again concluded that there was no evidence of pulmonary impairment.  Therefore, on January 31, 2001, Prudential determined that Ms. Heim did not suffer from an impairment that would prevent her from performing the duties of her own sedentary occupation, much less "any occupation," and upheld the initial decision to deny benefits.

The plaintiff then filed her second appeal on February 22, 2002, submitting in support the 1999 and 2000 plethysmography examinations.  In addition, plaintiff submitted Dr. Rennert's February 6, 2002 declaration indicating, without supporting rationale, that Ms. Heim's asthma prevented her from adequately performing her job at Xerox.  After submitting this information, the claimant asserted that Prudential did not decide the appeal in time, and deemed this a per se denial.  Thereafter, the plaintiff filed, what she calls a third appeal, on May 14, 2002 wherein she references the February 22 appeal and submits no new evidence.

After considering the Plaintiff's February 22 and May 14, 2002 submissions, Prudential began to pay Ms. Heim benefits in order to give her a "full and fair review" while they continued to evaluate her claims and condition, noting specifically that it was still unclear whether she was totally disabled pursuant to the Plan.  At the time that the decision to begin paying the benefits to Ms. Heim was made on August 16, 2002, Prudential determined that it was unclear how Ms. Heim's asthmatic condition would impact her ability to perform the material and substantial duties of any occupation, and that more information was needed.  Prudential specifically indicated that they would continue to follow with her treating physicians and requested that Ms. Heim advise of any changes in her condition or in her physicians.  In no way did Prudential indicate that Ms. Heim has proven that she was unable to work at any job to which she was reasonable fitted, and Prudential never determined that Ms. Heim could not work any job, even while making payments to her.

Thereafter, Prudential issued its final decision with respect to plaintiff's ability to work on November 25, 2003, after completely assessing the extensive medical evidence, statements from the claimant and her employer, and the provisions of the Plan. Based on this record, Prudential *determined that* the evidence demonstrated that there was nothing to indicate that Ms. Heim would be unable to perform "*any* occupation that she might reasonably

-12-

fitted." In the period between August 2002 and its final decision in November 2003, Prudential acquired additional medical records from Dr. Rennert, Dr. Able, Dr. Rosenberg, Dr. Mixa and Dr. Berger. Updated information obtained from the claimant included daily living questionnaires and information received through telephone conversations. The claimant's responses to the questionnaire indicated that her main daily stressor was an impending divorce. She cited that her sleep had been disturbed due to divorce proceedings, stating that "her husband adds stress." She outlined her ability to perform daily housework and childcare seven hours per day. She also advised of her participation in water exercise and her ability to drive approximately 60 miles.

Prudential's Medical Director reviewed the entirety of the record before making a determination that the plaintiff was not eligible for total disability benefits. Nonetheless, as a means of assisting plaintiff to return to work, Prudential extended Ms. Heim full disability benefits through December 31, 2003. Prudential also offered to help Ms. Heim transition back to work. Plaintiff, however, refused this offer and instead chose to remain unemployed despite an advanced education that offers her a multitude of opportunities for sedentary work.

By letter dated May 21, 2004, the plaintiff appealed Prudential's decision to terminate benefits and requested consideration of additional medical records consisting of two dates

of treatment, which were submitted with her own declaration.   In this written appeal, the plaintiff claims, arguendo, that the absence of stress because she is not working has resulted in a stabilization of her physical condition.   The plaintiff's basis for her continued claim of total disability dates back to a 1998 medical note from Dr. Rennert advising her to cease working.   This suggestion (given by Dr. Rennert in 1998) was made in consideration of her ability to perform her occupation as Manager of Education and Training.   The Plaintiff admits this in her declaration: "Dr. Rennert advised me that it was his opinion that [in 1998] that the severity of my asthma prevented me from doing my job with Xerox." Additionally, throughout [her] declaration, Ms. Heim continues to dwell on the substantial duties of her occupation at Xerox.   As clearly stated in the Plan, however, the plaintiff was no longer evaluated for total disability based on whether she is able to perform her former position at Xerox, but rather based on whether she was capable of "*any gainful*" employment.

On August 18, 2004, Prudential upheld its decision to terminate the plaintiff's disability benefits.   Prudential's physician reviewed the supplemental medical evidence provided by the plaintiff, which revealed certain instances of allergic reactions but no substantial evidence of chronic asthmatic condition that would prevent Ms. Heim from performing some form of work.   Prudential relied upon a surveillance report of August 2003

indicating that the plaintiff was capable of working out on a treadmill and pool side lounging for several hours, factors that support the plaintiff's capacity for sedentary work, at the very least.  In addition to Ms. Heim's medical condition at issue, she also indicated in the January 2003 medical report submitted on appeal that she has a history of alcoholism with AA treatment since 1998, the same year she initially went out on short term disability.  Prudential also relied upon the evidence that substantiated its prior determination of November 25, 2003.

Under ERISA and Fourth Circuit law, this Court must review Prudential's disability determination under a deferential "abuse of discretion" standard of review because the Plan language falls squarely within this standard and confers discretionary authority upon Prudential to make final benefit eligibility determinations. Even if a de novo standard was applied, Prudential's decision should be affirmed.

ERISA controls all aspects of plaintiff's disability claim in the instant suit, as well as this Court's review of the matter. See 29 U.S.C. §§ 1001-1461.  As outlined by the Supreme Court of the United States in Firestone & Rubber Co. v. Bruch, 489 U.S. 101 (1989), in ERISA cases such as this one the court must first determine the appropriate standard of review and consequently the level of deference that it will afford Prudential's administrative disability determination.

Because ERISA disputes of this nature are best characterized as contractual trust disputes in which the courts determine the respective rights of the parties under the terms of the disability policy, the central question regarding the applicable standard of judicial review is whether the parties have agreed, through the express and implied terms of the Policy, to grant the plan administrator (Prudential in this case) the authority to make eligibility determinations. See, e.g., Firestone, 489 U.S. at 110-15; Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan, 201 F.3d 335, 343 (4th Cir. 2000) ("As with any interpretation of a contractual trust document, we begin by examining the language of the Plan to determine whether the provision of benefits is prescriptive or discretionary and, if discretionary, whether the plan administrator acted within its discretion.") (citations omitted).  As the Supreme Court explained in Firestone, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard *unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan*." Id. at 115 (emphasis added).

The Fourth Circuit has repeatedly held that, in cases where the terms of a benefit plan confer discretionary authority on its administrator, the district court should utilize an "abuse of

-16-

discretion" standard in reviewing the administrator's eligibility determination:

> The threshold question for reviewing courts is now whether the particular plan at issue vests in its administrator's discretion either to settle disputed eligibility questions or to construe "doubtful" provisions of the plan itself. If the plan's fiduciaries are indeed entitled to exercise discretion of that sort, reviewing courts may disturb the challenged denial of benefits *only upon a showing of procedural or substantive abuse*. If not, the benefits determination at issue must be reviewed *de novo*.

De Noble v. Vitro Corp., 885 F.2d 1180, 1186 (4th Cir. 1989) (emphasis added). See also, e.g., Booth, 201 F.3d at 341; Doe v. Group Hospitalization & Med. Servs., 3 F.3d 80, 85 (4th Cir. 1993); Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997). In circumstances where the plan is both funded and administered by the same entity, reviewing courts should apply a "lessened" abuse of discretion standard. Ellis, 126 F.3d at 233 (quoting Bedrick v. Travelers Ins. Co., 93 F.3d 149, 152 (4th Cir. 1996) (emphasis added, additional internal citations omitted). The threshold question of standard review is also important as to whether the court may consider evidence not before the plan administrator. The Bernstein decision makes clear that when a "district court reviews a plan administrator's decision under a deferential standard, the district court is limited to the evidence that was before the plan administrator at the time of the decision." Berstein at 788 (citing Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994).

The Fourth Circuit has explained that "[u]nder this deferential standard, the administrator or fiduciary's decision *will not be disturbed if it is reasonable, even if the court would have come to a different conclusion independently*." Ellis, 126 F.3d at 232 (emphasis added) (citing Firestone, 489 U.S. at 115; Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997); Haley v. Paul Revere Life Ins. Co., 77 F.3d 84, 89 (4th Cir. 1996); Bernstein v. Capital Care, Inc., 70 F.3d 783, 787 (4th Cir. 1995); Fagan v. Nat'l Stabilization Agreement of the Sheet Metal Indus. Trust Fund, 60 F.3d 175, 180 (4th Cir. 1995); Doe, 3 F.3d at 85). Under these principles, an administrator's "decision is reasonable if it is 'the result of a deliberate, principled reasoning process and if is supported by substantial evidence.'" Id. (citations omitted).

In the De Nobel decision, the Fourth Circuit detailed the type of language that a plan should contain in order to confer discretionary authority on its administrator:

> There are obviously no magic words required to trigger the application of one or another standard of judicial review. In this setting, it instead need only appear on the face of the plan documents that the fiduciary has been "given [the] *power* to construe disputed or doubtful terms" - or to resolve disputes over benefits eligibility - in which case "the trustee's interpretation will not be disturbed if reasonable."

De Noble, 885 F.2d at 1187 (citation omitted, emphasis in original).

In order to trigger the abuse of discretion standard review, regardless of the actual terms used, the language need only "indicate a clear intention to delegate final authority to determine

-18-

eligibility to plan administrator ...," or "vest[] in its administrators discretion either to settle disputed eligibility questions or construe doubtful provisions of the plan." <u>Feder v. The Paul Revere Life Ins. Co.</u>, 228 F.3d 518, 522-23 (4th Cir. 2000) (citing <u>De Nobel</u>, 885 F.2d at 1187). <u>See also</u>, <u>e.g.</u>, <u>Gallagher v. Reliance Standard Life Ins. Co.</u>, 305 F.3d 264, 268-69 (4th Cir. 2002); <u>Doe</u>, 3 F.3d at 85.

The terms of the Plan at issue here fall squarely within these standards to confer discretionary authority upon Prudential to make final eligibility determinations.  With respect to Long Term Disability benefits, the Policy's language specifically indicates a clear intention to delegate final authority to Prudential to determine eligibility:

"Total Disability" exists when Prudential determines that all of these conditions are met:

(1)   Due to Sickness or accidental injury, you are not able to perform, for wage or profit, the material and substantial duties of *any gainful occupation* for which you are reasonably fitted by your education, training or experience, or other work which the Employer has made available to you.

(2)   You are not working at any job for wage or profit.  This does not apply to a job with another employer which began prior to your Total Disability.

(3)   You are under the regular care of a Doctor.

The language in the Policy, by its express and deliberate terms, shows a "clear intention to delegate final authority to determine eligibility to [Prudential]," and "vests in [Prudential]

-19-

discretion...to settle disputed eligibility questions...." <u>Feder</u>, 228 F.3d at 522-23.  Under the specific Plan language, a claimant is only eligible for total disability benefits *when Prudential determines that* she is unable to perform the material and substantial duties of any gainful occupation due to sickness or injury.

The Fourth Circuit's decision in <u>Bernstein v. CapitalCare, Inc.</u>, 70 F.3d 783 (4th Cir. 1995) is controlling law in holding that language almost identical to that at issue here triggers the abuse of discretion standard of review.  <u>Bernstein v. CapitalCare, Inc.</u>, 70 F.3d 783, 788 (4th Cir. 1995).  In <u>Bernstein</u>, the clarion language is "[B]enefits will be paid 'only if CapitalCare determines' that certain conditions are met." <u>Bernstein</u> at 70 F.3d at 788.  This prefatory language, like that at issue in this case, was central to the court's determination that the policy specified discretionary authority in disability eligibility determinations.

Thereafter, in <u>Gallagher v. Reliance Ins. Co.</u>, 305 F.3d 264 (4th Cir. 2002), the Fourth Circuit more fully described the analysis to be applied when a court undertakes to determine whether policy language confers discretionary authority upon the plan administrator to make benefit eligibility determinations.  <u>Gallagher v. Reliance Ins. Co.</u>, 305 F.3d 264, 269 (4th Cir. 2002).  In <u>Gallagher</u>, the Fourth Circuit looked at language that was decidedly different than the language at issue in this case, or in <u>Bernstein</u>,

-20-

to assess whether that plan required the participant to submit "satisfactory proof of his disability" to the insurer or, conversely, whether the policy required that the participant "submit proof of his disability that is satisfactory to [the insurer]."

The former interpretation, as determined by the Gallagher court, requires "proof of disability that is objectively satisfactory," thereby granting no discretion to the insurer, whereas the latter requires a subjective determination by the insurer supported by the discretionary policy language.

While the policy language in Gallagher was found not to afford subjective discretion to the insurer, that policy language and the policy language at issue here, as in Bernstein, fall squarely on opposite ends of the Gallagher court's analysis. In the Gallagher plan, the prefatory language: "We will pay a Monthly Benefit if an Insured:" confers no discretion upon the insurer, and it is only by reading through the four itemizations thereunder that one discovers the drafter's requirement of "satisfactory proof." Gallagher, 305 F.3d at 276 (noting that under the plan, the insured must "submit satisfactory proof of Total Disability to us"). The focus in Gallagher was on the language "to us," as the court found that "the prepositional phrase 'to us,' as written in the Plan, is more naturally read as modifying 'submit' rather than 'satisfactory'" in making its determination that the plan language did not grant discretion to the insurer. Gallagher, 305 F.3d at 270. In

comparison, Prudential's plan language here, like the plan language in _Bernstein_, is significantly different in that the prefatory language explicitly confers discretion on the insurer to determine when satisfactory proof has been submitted, as each of the three requirements in the Prudential plan are prefaced by "when Prudential determines that." Thus, the Prudential policy here explicitly sets forth Prudential's discretionary authority to make eligibility determinations based on its receipt of information that is subjectively satisfactory to Prudential.

Previously, this court has determined that the very language at issue in this case is entitled to discretionary review.   In _Chisholm v. KPMG Long Term Disability Plan_, Civil Action No. 03-1531, Mem. Op. Oct. 6, 2004, the policy was insured by Prudential and included the same introductory language: "'Total Disability'" exists _when Prudential determines that_ all of [the] conditions are met." (Emphasis added.) (_Chisholm_, Mem. Op. 6.) In reviewing this language to determine the standard of review, this court found that the plan language "confers upon Prudential the discretionary authority to render eligibility determinations." _Id._ This court noted that the introductory language "when Prudential determines that" gives rise to the conclusion that "the determination of eligibility is to be made by Prudential," and noted that in _Bernstein_ the Fourth Circuit has "examined similar language and concluded that it conferred discretionary authority sufficient to

-22-

trigger the abuse of discretion standard." Id.  The hallmark language "when Prudential determines that" continues to support a conclusion that the abuse of discretion standard applies, and therefore it is the correct standard of review in the case bar.

Notably, other District Courts within the Fourth Circuit have held the same Prudential policy language to confer discretionary authority.  See, Eubanks v. Prudential Ins Co. of Am., 336 F. Supp. 2d 521, 528 (M.D.N.C. 2004), Beam v. Prudential Ins. Co. of Am., 2004 U.S. Dist. LEXIS 4188, at *12-13 (M.D.N.C. 2004); See also Machovec v. The Prudential Ins. Co. of Am., 2004 U.S. Dist. LEXIS 12496, at *10-13 (D. Md. 2004).  Indeed, numerous other courts outside of the Fourth Circuit Court, while not binding upon this Court, have likewise held this Prudential policy language to confer discretionary authority.  See Roach v. Prudential, 2003 U.S. App. LEXIS 7232, at *3, (10th Cir. 2003), Knapp v. Prudential, 2003 U.S. Dist. LEXIS 6235, at *6-8 (W.D. Mich. 2003), Mitchell v. Prudential Health Care, No. 2002 U.S. Dist. LEXIS 10567, at *2-3, 4-5 (D. Del. 2002), Chapman v. Prudential, 267 F. Supp. 2d 569, 577 (E.D. La. 2003), and Adams v. Prudential, 280 F. Supp. 2d 731, 734, 736 (N.D. Ohio 2003).

Because the terms of the benefits plan specifically confer upon Prudential the discretionary authority to make all long term disability determinations, the Court must limit its review of the administrator's decision and apply a deferential standard.  Under

-23-

this standard, Prudential's decision should not be disturbed "if it is reasonable, even if the court would have come to a different conclusion independently." See, e.g., Ellis, 126 F.3d at 232.

Prudential's decision in this matter was thorough, well reasoned, and consistent with the objective findings of its investigation and this Court must uphold Prudential's determination that Ms. Heim did not meet Total Disability criteria, and that she is not entitled to receive Long Term Disability benefits. See, e.g., Feder, 228 F.3d at 522; Ellis, 126 F.3d at 232 ("decision is reasonable if it is 'the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'") (quoting Bernstein, 70 F.3d at 788).

Among the factors that the Fourth Circuit has identified in considering whether to apply a deferential standard of review, two primary factors guide the Court's review of a disability determination such as the one at issue here: (1) whether the Policy administrator's decision-making process was reasoned and principled; and (2) whether the administrator's decision was supported by the evidence before it. See, e.g., Myers v. Hercules, Inc., 253 F.3d 761 (4th Cir. 2001).

Taken individually and collectively, Prudential's ultimate benefits determination and the administrative review decisions at each stage were the result of a rational, principled claim review process, and supported by substantial medical and vocational

evidence.  Under the terms of the Policy, and consistent with ERISA, Prudential properly determined within its discretionary authority that plaintiff did not qualify for total disability benefits because she failed to provide sufficient evidence that she was unable to engage in "any gainful occupation."

Upon receipt of Ms. Heim's initial application for benefits, Prudential conscientiously collected and reviewed all medical evidence that was available in making its initial disability determination before determining that Ms. Heim was not entitled to benefits.  Once additional information was provided during the appeals process, Prudential paid benefits only to ensure a full and fair review.  Prudential continued to gather additional evidence through the time of its final decision.  Then, even after determining that Ms. Heim did not meet the criteria for long-term benefits, Prudential continued to pay Ms. Heim benefits through December of 2003, and even offered to assist Ms. Heim in returning to work.  Ms. Heim rejected this offer.

Commencing immediately after notice of the claim, Prudential began to collect information about, and monitored, plaintiff's physical and medical condition.  After initially processing the claim and denying it based on a lack of medical documentation, Prudential made an effort to augment the hard science available - the objective medical evidence rather than Ms. Heim's subjective claims and her physician's guesses as to her anticipated monthly

-25-

absences if she were working - to inform its decision.  Prudential assessed her medical condition through its claims managers and staff on an ongoing basis.  Prudential also obtained plaintiff's medical records and considered her condition as reflected in the records of her treating physicians.  Prudential even contacted plaintiff's health care providers directly when additional information was required.  Prudential also discussed Ms. Heim's medical condition and physical limitations directly with her.

Based on the record, there was, as a matter of law, a substantial quantum of evidence supporting Prudential's determination and its denial of plaintiff's disability claim.  The reasonableness of Prudential's determination is further supported by the lengthy administrative record, an independent review of Ms. Heim's medical records, an independent medical examination, two internal medical reviews, and a reversal of Prudential's initial decision to deny benefits while the matter was fully examined. Combined with Prudential's offer of vocational rehabilitation, these facts demonstrate a reasoned, calculated, and complete decision-making process.  That Ms. Heim was provided three additional layers of appeal even after the determination that she was ineligible for benefits further demonstrate the thorough and well reasoned process applied in this matter.

Examining the present matter de novo would result in the same determination that Prudential made.  The totality of the medical

-26-

evidence both from Ms. Heim's treating physicians and the exams and reviews performed by and through Prudential, established that Ms. Heim is not entitled to benefits under the Plan.

Contrary to assertions in her appeals, the standard by which the claimant was found to be disabled by the Social Security Administration is not the same standard that is applied in the Plan at issue, and an ERISA plan administrator is not bound by the Social Security Administration decisions. Gallagher, 305 F.3d at 275. The Plan is a private contract for benefits only to be granted *when Prudential determines that* the plaintiff is totally disabled. In support of her May 2004 appeal, the plaintiff wrote a declaration which insists that she could be expected to have an exacerbation of her asthma four days a month. Notably missing, however, is any medical proof to support that claim. Moreover, this argument ignores the fairly obvious differences between total disability, which is covered by this policy, and partial disability, which is not. Thus, even if the court were to accept as true plaintiff's self serving statement that she would expect asthmatic flare ups, and assume that those flare ups would be severe enough to cause her to miss work, this would make her only partially disabled at the very most.

The absence in Dr. Rennert's February 2002 declaration of an opinion regarding Ms. Heim's capacity to work part time leads to a reasonable inference that she is capable of working at least part

time, notwithstanding her asthma, and that she did not meet the definition of total disability as defined in the Plan. Although Dr. Rennert declares that her asthma causes her to be "disabled from employment," this conclusory statement is nowhere supported by recent physical examination, updated diagnostic testing, or even an explanation of what elements of her employment Ms. Heim was supposedly unable to perform, and thus should be given little weight. Conversely, Dr. Abel should be credited for desiring to "generate an objective opinion regarding her care." He felt it important to make his own decisions on her treatment based upon her current condition and capabilities, and not to rely solely upon her prescription history by Dr. Rennert.

The plaintiff's ability to work despite her medical condition can only be tested by a willingness to try a job that was within her abilities and her self imposed restrictions. When Prudential offered to aid Ms. Heim in finding a job, however, she reiterated her unwillingness to attempt work by stating that she did "not want to accept any position, however small, only to fail to meet basic expectations." This assumption that she would fail represents only Ms. Heim's mental state - a mental state that is influenced by her ongoing depression, a condition that is not covered under the plan - and is not reflective of any actual attempts at employment. In essence, Ms. Heim seemingly expects an insurer and administrator of an ERISA Plan with finite funds to accept as true her own self-

serving and unsupported statements of her condition.  Indeed, it is the plaintiff's burden to prove her disability.

The plaintiff has also argued in her appeals that the stress of any occupation would exacerbate her asthma.  However, on appeal the medical evidence that the plaintiff presented as additional support of her disability was not that of stress related asthmatic episodes, but rather non-chronic asthmatic episodes caused by allergic reactions to latex balloons and Carbocaine used in a dental procedure.  Notably, according to the records provided to Prudential, Ms. Heim's only ongoing issues related to stress deal with her divorce, which is reported several times over in Dr. Rosenberg's records, yet she does not report asthmatic flare ups during these visits.  Thus, the assumed disabling correlation between her stress levels and her asthmatic condition are not supported - indeed they are contradicted - even by her own report.

For the foregoing reasons, summary judgment should be entered for the Defendant.  An appropriate Order shall issue.

/s/
_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
February 16   , 2006

-29-